UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| GILCHRIST CONSTRUCTION COMPANY, LLC | CIVIL ACTION NO. 18–0925 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| THE TRAVELERS INDEMNITY COMPANY, ARCH INSURANCE COMPANY, JUANITA FONTENOT, AND T. JUNE WILDER | MAGISTRATE JUDGE KAY |

# MEMORANDUM RULING

Before the Court is a Motion to Dismiss filed by one of the defendants, Arch Insurance Company ("Arch" or "the Defendant"). See Record Document 25. Arch contends that coverage did not exist under policies issued by it to Gilchrist Construction Company, LLC ("Gilchrist") and therefore it also had no duty to defend Gilchrist. See id. For the reasons that follow, the Motion to Dismiss is **GRANTED**.

## BACKGROUND

**I.  Procedural History.**

This matter arises from a petition filed by Gilchrist in the Thirty-Third Judicial District Court, Allen Parish, Louisiana, against The Travelers Indemnity Company and Arch Insurance Company, and individual defendants Juanita Fontenot ("Fontenot") and T. June Wilder ("Wilder"). See Record Document 1, Ex. 3 (state court record). Gilchrist asserts breach of contract claims against the insurers and seeks declaratory judgments against them based on their denial of defense and indemnity to Gilchrist, in alleged violation of commercial general liability policies acquired by Gilchrist from those insurers. See id. at 4–9. Gilchrist's claims against Arch are in connection with a lawsuit brought by Fontenot

and Wilder to recover damages from Gilchrist for trespass and breach of contract. The Fontenot/Wilder lawsuit arose from an agreement between the parties to buy and sell dirt from the Fontenot/Wilder property and to temporarily store debris on their property from a nearby road construction project. See id. at 5–7. Gilchrist alleges that it was forced to defend itself in the Fontenot/Wilder suit and that neither of its insurers has indemnified it for the $5,559,000 verdict, plus costs and fees, awarded to Fontenot and Wilder. See id.

In the instant suit, Gilchrist raised no claims against Fontenot and Wilder but instead named them as "interested parties" in its claim for declaratory judgment against the insurers. See id. at 8–9, ¶¶ 39 & 49. The insurers removed the suit to this court on the basis of diversity jurisdiction, 28 U.S.C. § 1332, alleging that Fontenot and Wilder were improperly joined to defeat jurisdiction. See Record Document 1. Gilchrist moved to remand, contesting the allegations of improper joinder. See Record Document 19. Magistrate Judge Kay recommended that the motion to remand be denied and that Fontenot and Wilder be dismissed without prejudice as improperly joined, and this Court adopted her recommendation. See Record Documents 34 and 40.

While the motion to remand was pending, Arch filed the instant motion to dismiss for failure to state a claim. See Record Document 25. Gilchrist sought, and was granted, an extension of time to file an opposition to Arch's motion to dismiss, requesting ten days after a ruling issued as to the motion to remand to file its opposition. See Record Documents 31 and 32. Gilchrist has now filed an opposition to Arch's motion and Arch has filed a reply. See Record Documents 41 and 43.

II. **Relevant Allegations and Policy Provisions.**

Arch insured Gilchrist through a commercial general liability policy, which was

renewed twice.  See Record Document 25 at Exs. C, D and E.[1]  After the underlying Fontenot/Wilder lawsuit was filed in 2012, Gilchrist requested that Arch provide a defense and indemnity under the policies.  Arch denied defense and indemnity coverage for the claims.

In their state court complaint, Fontenot and Wilder asserted that Gilchrist's actions violated Louisiana law through failure to perform the contract with them in good faith and failure to perform its duties and obligations under the contract.  See Record Document 25, Ex. 2 at ¶ 13.  They alleged that "Gilchrist [] filled in the pit from which they extracted Petitioner's dirt with worthless dirt, debris, concrete, wood and trash from elsewhere" and that Gilchrist "under-measured and underpaid for the dirt that it did haul from Petitioner's land."  Id. at ¶¶ 7 and 9.  They further asserted that "Gilchrist has continually and maliciously made an outright refusal to pay Petitioner the amounts owed under contract or to remove the debris they dumped on Petitioner's land in violation of the contract."  Id. at ¶ 12.  They alleged that the "continual presence of the dirt, debris, concrete, wood, and trash on Petitioner's property also constitutes an ongoing and continuing trespass by Gilchrist."  Id. at ¶ 13.  Fontenot and Wilder referred to "Gilchrist's bad faith refusal to faithfully perform its obligations" when detailing the damages they had suffered.  Id. at ¶ 14.

The Arch policy provides coverage to Gilchrist for "bodily injury" and "property damage."  See Record Document 25 at Ex. C.  The relevant coverage provisions and exclusions of the policies state:

---

[1]The language of each of the policies is the same as applied to the instant facts. Therefore, for ease of reference, the Court will refer to the original policy issued, Ex. C to Arch's Motion to Dismiss.

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

. . .

    b.  This insurance applies to "bodily injury" and "property damage" only if:

       **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

       **(2)** The "bodily injury" or "property damage" occurs during the policy period. . . .

. . .

2. **Exclusions**

This insurance does not apply to:

   a. **Expected Or Intended Injury**

      "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. . . .

Record Document 25, Ex. C at 23-24.

Under the Arch Policies, "occurrence" and "property damage" are defined:

**SECTION V – DEFINITIONS**

. . .

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

> . . .
>
> **17.** "Property damage" means:
>
> **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
> **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Id. at 36-37.

# LAW AND ANALYSIS

## I. The Rule 12(b)(6) Standard.

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The standard for the adequacy of complaints under Rule 8(a)(2) is a "plausibility" standard found in Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007), and its progeny. Under this standard, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555-56, 127 S. Ct. at 1965 (citations omitted). If a pleading only contains "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," the pleading does not meet the standards of Rule 8(a)(2). Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citation omitted). Additionally, courts must accept all allegations in a complaint as true. See Twombly, 550 U.S. at 555, 127 S. Ct. at 1965.

In considering a motion filed pursuant to Rule 12(b)(6), a court may consider: (1) the pleadings and any attachment to the pleadings; (2) documents incorporated into the

complaint by reference; and (3) documents that a defendant attaches to its motion to dismiss if those documents are referred to in the plaintiff's complaint and are central to the plaintiff's claim (such as insurance policies and underlying complaints). See Little v. USAA Cas. Ins. Co., No. 09-30948, 2010 WL 4909869, at *2 (5th Cir. 2010), citing Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322, 127 S. Ct. 2499, 2509 (2007) and Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000). In its complaint, Gilchrist refers to the Fontenot/Wilder petition and the insurance contracts under which it claims coverage. These documents are also central to Gilchrist's current claims. These documents will therefore be considered in the analysis of the motion to dismiss.

**II. Insurance Law.**

Under Louisiana law, "[a]n insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code." Mayo v. State Farm Mut. Auto. Ins. Co., 869 So.2d 96, 99 (La. 2004) (citations omitted); see also Lamar Adver. Co. v. Cont'l Cas. Co., 396 F.3d 654, 659-660 (5th Cir. 2005). "The judiciary's role in interpreting insurance contracts is to ascertain the common intent of the parties to the contract" by construing words and phrases "using their plain, ordinary and generally prevailing meaning. . . ." Mayo, 869 So.2d at 99 (citations omitted).

"An insurer's duty to defend suits on behalf of an insured presents a separate and distinct inquiry from that of the insurer's duty to indemnify a covered claim after judgment against the insured in the underlying liability case." Martco Ltd. P'ship v. Wellons, Inc., 588 F.3d 864, 872 (5th Cir. 2009) (citation omitted). Factual inquiries beyond the complaint are prohibited with respect to the duty to defend but they are indispensable in assessing the

duty to indemnify. See id.

Arch contends that it did not have a duty to defend Gilchrist in the underlying action because there was no occurrence as defined by the Arch policies. Arch further asserts that the majority of damages alleged by Fontenot and Wilder were excluded because they were purely economic damages. Finally, Arch contends that if an occurrence did take place that triggered coverage under its policies, the claims are excluded under the Arch policies. Gilchrist contends that the Fontenot/Wilder petition included allegations of "property damage" that was caused by an "occurrence" and that no policy exclusion applies, so as to result in coverage by the Arch policies. Thus, the issues before the court are whether the Fontenot/Wilder petition alleged a potentially covered event triggering Arch's duty to defend under the policies and whether the alleged triggering event fell within an exclusion of the policy.

### A. Duty to Defend.

The analysis of the duty to defend begins with an examination of whether any of the facts pled in the underlying state court petition possibly fall within matters covered under the insuring clause. See Martco Ltd. P'ship, 588 F.3d at 872. The insured bears the burden on this issue. See id. "If claims potentially covered under the insuring clause are pled, the insurer then has the burden of proving that the complaint states only facts that fall within an exclusion from coverage." Id., citing Doerr v. Mobil Oil Corp., 774 So.2d 119, 124 (La. 2000). This court must assess whether there is a duty to defend by applying the allegations of the complaint to the underlying policy without resort to extrinsic evidence, known in Louisiana as the "Eight Corners Rule." See id.; Lamar Adver. Co., 396 F.3d at 659-660, citing Complaint of Stone Petroleum Corp., 961 F.2d 90,91 (5th Cir. 1992). "The

insurer has a duty to defend unless the allegations in the complaint as applied to the policy unambiguously preclude coverage." Id., citing Elliott v. Cont'l Cas. Co., 949 So.2d 1247, 1250 (La. 2007). An insurer's duty to defend arises "whenever the pleadings against the insured disclose a possibility of liability under the policy." Id., citing Meloy v. Conoco, Inc., 504 So.2d 833, 839 (La. 1987). The allegations of the complaint are liberally construed when determining whether they set forth grounds that bring the claims within the scope of the insurer's duty to defend. See id., citing Yount v. Maisano, 627 So.2d 143, 153 (La. 1993). Any ambiguity in the policy is construed against the insurer. See id., citing Smith v. Matthews, 611 So.2d 1377, 1379 (La. 1993).

The court first turns to whether Gilchrist satisfied its burden of demonstrating that the Fontenot/Wilder petition alleges a set of facts that would fall within coverage. More specifically, the court must first determine whether the Fontenot/Wilder petition alleges that the "property damage" at issue was caused by an "occurrence." As mentioned, under Louisiana law, "[t]he duty to defend is determined by examining the allegations of the injured plaintiff's petition . . . and the insurer is obligated to tender a defense unless the petition unambiguously excludes coverage." Edwards v. Cont'l Cas. Co., 841 F.3d 360, 363 (5th Cir. 2016), quoting Hardy v. Hartford Ins. Co., 236 F.3d 287, 290 (5th Cir. 2001).

Under the language of the Arch policy, Arch "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies" if the "'bodily injury' or 'property damage' is caused by an 'occurrence.'" Record Document 25, Ex. C at 1. The policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id. The dispute arises when comparing the

Fontenot/Wilder petition in the underlying state court proceeding to the language of the insurance policy and then determining the scope of the word "occurrence."

The complicating factor is that the word "accident," as used in the definition of "occurrence," is not defined in the policy. Arch directs the court to the definition of "accident" provided by the Eastern District of Louisiana in <u>New Orleans Deli & Dining, LLC v. Continental Casualty Company.</u>, No. 10-4642, 2011 WL 4551165 (E.D. La. Sept. 29, 2011). In that case, the court, relying upon Black's Law Dictionary, defined accident as "an unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that cou[ld] not be reasonably anticipated." <u>Id.</u> at *4. However, the Fifth Circuit has also addressed the issue of how to define "accident" when the policy fails to do so, stating that "when the word 'occurrence' is defined as an 'accident,' the occurrence of an unforeseen and unexpected loss constitutes an 'accident' and therefore an 'occurrence.'" <u>Freeport-McMoRan Energy v. Mullen</u>, 233 F. App'x 341, 345 (5th Cir. 2007), quoting <u>N. Am. Treatment Sys., Inc. v. Scottsdale Ins. Co.</u>, 943 So.2d 429, 444 (La. App. 1st Cir. 2006).

Based on the definition of "accident," Arch contends that a reading of the Fontenot/Wilder petition shows an overriding theme of non-accidental conduct in that Gilchrist's conduct intentionally harmed the Fontenot/Wilder property. <u>See</u> Record Document 25 at 11. Arch argues that as the Fontenot/Wilder suit alleged that Gilchrist "maliciously made an outright refusal to pay Petitioner the amounts owed under contract or to remove the debris they dumped on Petitioner's land in violation of the contract" and that "Gilchrist's bad faith refusal to faithfully perform its obligations owed to Petitioner," these allegations indicate intentional misconduct so as to not qualify as an "occurrence"

under the policy.  See Record Document 25 at 11; id., Ex. 2 at ¶ 12.

In determining whether an accident has been alleged, this Court finds New Orleans Deli and Dining beneficial.  In addition to defining the word "accident," the Eastern District in New Orleans Deli and Dining also addressed the duty to defend and intentional conduct in relation to a coverage clause that was similar to the one currently before the court.  See New Orleans Deli & Dining, LLC v. Cont'l Cas. Co., No. 10-4642, 2011 WL 4551165 (E.D. La. Sept. 29, 2011).  The plaintiffs in New Orleans Deli and Dining were seeking a defense and indemnity with respect to a civil action that was pending in federal court. In the underlying case, New Orleans Deli and Dining LLC ("NODD") was accused of denying employees tips given them by customers.  See id. at *1. The legal theories alleged by the former employees (referred to as the McCollum plaintiffs) in the underlying suit were "breach of contract, negligence, fraud, unjust enrichment, and conversion." Id.  The policy contained the same definition of "occurrence" as the Arch policy.  The New Orleans Deli and Dining court found that the plaintiffs had not alleged that their loss of use was caused by an "occurrence" as it was defined in the policy.  In holding the insurance company owed no duty to defend, the Eastern District of Louisiana stated:

> All of the allegations in the McCollum plaintiffs' complaint allege intentional acts on the part of NODD. The McCollum plaintiffs allege that NODD implemented a tip policy whereby the tips were purposefully taken by the managers or other employees of the restaurants and either kept or donated to charity. The alleged acts of implementing the tip policy and taking the tips were done intentionally, not accidentally nor negligently. Thus, plaintiffs' claims do not sound in negligence, but rather the intentional tort, and intentional acts are excluded by the policy. Therefore, CCC does not owe NODD a duty to defend it in the McCollum litigation.

Id. at *4.²

Gilchrist argues that, under Louisiana law, an "occurrence" is an event that is "unusual and unexpected" from the standpoint of the person injured, citing Gray v. State, 191 So.2d 802, 816 (La. App. 3d Cir. 1966). See Record Document 41 at 6. Gilchrist relies entirely upon Gray and its analysis of "occurrence" to conclude that Arch breached its contract by failing to defend it in the underlying action.³ Gray involved a trespass taking of road fill by a contractor who had been wrongly instructed by the Department of Highways to remove the fill from an area the Department had not lawfully expropriated. The contractor's insurer denied the claim, stating that there was no "occurrence" because the contractor had intentionally removed the dirt from the property. Finding the contractor covered by liability insurance, the court stated:

> The real basis for determining whether an illegal removal of dirt is an "accident" within the meaning of the policy should be by ascertaining the intention of the parties. By a comprehensive general liability policy, a contractor seeks protection against the almost infinite ways in which he might unintentionally (i.e., by accident) be held liable in the operation of his business. The policy should afford protection against liability which, as here, arises out of the conduct of the contractor which he undertakes without actually knowing or expecting that he will be held liable for damages as a result. In this sense, the unexpected loss to

---

²Similarly, in Pylant v. Lofton, 626 So.2d 83 (La. App. 3d Cir. 1993), the underlying suit that the insured was seeking a defense for was one of sexual harassment. In the underlying suit, the plaintiff pled both negligent and intentional infliction of emotional distress. See id. at 87. The Louisiana Third Circuit held that this did not constitute an "occurrence" because the conduct, sexual harassment, was clearly intentional and not an accident. See id.

³Gilchrist improperly attempts to take its arguments beyond the eight corners of the policy and petition in relation to the duty to defend. As Arch correctly noted in its reply brief, Gilchrist's arguments regarding what allegedly occurred after the completion of the Fontenot/Wilder contract are immaterial to the inquiry.

> the landowner for which [the contractor] is held liable is within the ambit of the protection intended to be provided by [the] policy.

Gray, 191 So.2d at 816.

Gilchrist contends that the instant facts are "parallel" to those in Gray. Gilchrist asserts that there are no allegations in the Fontenot/Wilder petition that they knew they would be damaged by Gilchrist's use of the land nor were there claims that Gilchrist was aware of the liability it faced associated with its actions on the land. Gilchrist thus contends that these allegations, taken as true, are sufficient to survive the instant motion to dismiss. See Record Document 25 at 8. This Court disagrees.

The Fontenot/Wilder petition does not allege conduct undertaken by Gilchrist that would result in Gilchrist not "actually knowing or expecting that [it would] be held liable for damages as a result." Gray, 191 So.2d at 816. To the contrary, the conduct alleged in the petition is conduct that *would* result in "actually knowing or expecting" that Gilchrist would be held liable for damages as a result. Specifically, the petition asserts that "[b]eginning on or about August 18, 2007 up and until March 23, 2011, Petitioner noticed and complained to Gilchrist that it had been using the land subject to the contract to dump worthless asphalt, dirt, concrete, wood and trash. Gilchrist had assured Petitioner the entire time that the site would be cleaned up and the contract honored." Record Document 25, Ex. 2 at ¶ 6. These are not actions which could unknowingly result in liability for Gilchrist. As the court in Gray noted, through a comprehensive general liability policy, a contractor seeks protection against the almost infinite ways in which he might unintentionally (i.e., by accident) be held liable in the operation of his business. There is simply no reasonable way to interpret the allegations of the Fontenot/Wilder petition to

include unintentional or accidental conduct. Even after construing the allegations of the Fontenot/Wilder petition liberally, this Court cannot say that the conduct alleged by the Fontenot/Wilder petition was done "without knowing or expecting that [Gilchrist] would be held liable for damages as a result." Id. Thus, Gray is of no help to Gilchrist.

Louisiana courts have held that "[i]t is well settled that the allegations of fact, and not conclusions, contained in the petition determine the obligation to defend." Duhon v. Nitrogen Pumping & Coiled Tubing Specialists, Inc., 611 So.2d 158, 160-161 (La. App. 3rd Cir. 1992), quoting Jackson v. Lajaunie, 264 La. 181, 270 So.2d 859 (1972). In the Fontenot/Wilder petition, the allegations are of intentional conduct, which prevent the conduct from being considered an accident, and thus an occurrence, under the policy. There is no question that "dump[ing] worthless asphalt, dirt, concrete, wood, and trash" on the Fontenot/Wilder property is an intentional act. Record Document 25, Ex. 2. Gilchrist was also alleged to have "filled in the pit from which they extracted Petitioner's dirt with worthless dirt, debris, concrete, wood and trash from elsewhere." Id. The allegations of the Fontenot/Wilder petition further unambiguously alleged intentional conduct by stating:

> Despite Petitioner's efforts to have the worthless dirt, debris, concrete, wood, and trash dumped on its property removed by Gilchrist, and despite Petitioner's efforts to be properly compensated for the amount of valuable dirt removed from its property, Gilchrist has continually and maliciously made an outright refusal to pay Petitioner the amounts owed under contract or to remove the debris they dumped on Petitioner's land in violation of the contract.

Id. These allegations of fact clearly show Fontenot/Wilder is pleading intentional conduct. Gilchrist's attempts to reframe the description of its actions cannot mask all of the factual allegations of intentional conduct set out in the Fontenot/Wilder petition. Therefore, in the

underlying Fontenot/Wilder action, Gilchrist's actions do not constitute an "occurrence" within the meaning of the policy. The underlying state court proceeding is a lawsuit pertaining to the intentional acts of Gilchrist.[4] Thus, the Arch policy does not provide a duty to defend the Fontenot/Wilder lawsuit, as there has been no "occurrence" as contemplated by the Arch policy.[5]

### B. Duty to Indemnify.

Arch contends that it has no duty to indemnify Gilchrist for the judgment in the underlying lawsuit for the same reasons that it had no duty to defend. See Record Document 25 at 13. Arch relies upon the fact that prior to trial in the underlying lawsuit, Fontenot/Wilder sought leave to file an amended petition, which was granted by the trial court, "clarifying that [Fontenot/Wilder] are not seeking loss of farming income or asserting claims in tort." Record Document 17, Ex. 1, First Amended Petition at 1 ¶ 3. Thus, the causes of action that proceeded to trial were for breach of contract and bad faith breach of contract. See id. at 4 ¶¶ 15-16. The jury verdict form in the underlying action indicates that the jury answered "yes" when asked whether the plaintiffs had proven that the defendant breached a contractual obligation it owed to plaintiffs and also answered "yes" when asked whether the defendant acted in bad faith in breach of its obligation. See

---

[4]Even if the court concluded that coverage existed under the Arch policy, Gilchrist's claims would likely ultimately be excluded, as the Arch policy excludes coverage for "property damage" that is "expected or intended from the standpoint of the insured." Record Document 25, Ex. C at 2. However, the Court need not reach this issue.

[5]Arch has also sought dismissal of Gilchrist's claims on the basis that "the majority of damages alleged by Fontenot/Wilder are excluded from coverage as purely economic damages" such as "failure to pay amounts due and loss of income." Record Document 25 at 11. As this Court has determined that there was no "occurrence" under the Arch policy, this issue also need not be addressed.

Record Document 17, Ex. 3.[6] Arch thus concludes that because the jury found a bad faith breach of contract, they also implicitly found that Gilchrist committed an intentional act resulting in damages, which was not an "occurrence" under the Arch policies. Gilchrist, like Arch, bases its arguments regarding the duty to indemnify on the arguments made regarding the duty to defend.

The Court has found that Arch had no duty to defend because Gilchrist has not shown that the allegations in the Fontenot/Wilder lawsuit are an "occurrence" that would be covered by the policies. Since there is no additional evidence before the Court that would change the determination of coverage, the Court concludes that Arch has no duty to indemnify.

## CONCLUSION

Based on the foregoing, the Motion to Dismiss filed by Arch (Record Document 25) is **GRANTED**.

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 11th day of January, 2019.

                                              */s/ Maurice Hicks/*
                                    S. MAURICE HICKS, JR., CHIEF JUDGE
                                    UNITED STATES DISTRICT COURT

---

[6] Regarding the indemnity analysis, the court may take judicial notice of the jury verdict form in the state court record as a matter of public record. See Norris v. Hearst Trust, 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.").