UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| GILCHRIST CONSTRUCTION COMPANY, LLC | CIVIL ACTION NO. 18–0925 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| THE TRAVELERS INDEMNITY COMPANY, ARCH INSURANCE COMPANY, JUANITA FONTENOT, AND T. JUNE WILDER | MAGISTRATE JUDGE KAY |

**MEMORANDUM RULING**

Before the Court is a Motion to Dismiss filed by the remaining defendant, The Travelers Indemnity Company ("Travelers" or "the Defendant"). See Record Document 50. Travelers contends that coverage did not exist under policies issued by it to Gilchrist Construction Company, LLC ("Gilchrist") and that it had no duty to defend Gilchrist. See id. For the reasons that follow, the Motion to Dismiss is **GRANTED**.[1]

**BACKGROUND**

**I.   Procedural History.**

This matter arises from a petition filed by Gilchrist in the Thirty-Third Judicial District Court, Allen Parish, Louisiana, against Travelers and Arch Insurance Company ("Arch"), and individual defendants Juanita Fontenot ("Fontenot") and T. June Wilder ("Wilder"). See Record Document 1, Ex. 3 (state court record). In the instant action, Gilchrist asserts breach of contract claims against Travelers and Arch and seeks

---

[1] This Court previously granted a similar Motion to Dismiss filed by the other defendant, Arch Insurance Company. See Record Documents 25 and 48-49; Gilchrist Constr. Co. LLC v. Travelers Indem. Co., 358 F.Supp.3d 583 (W.D. La. Jan. 11, 2019). Much of the following background and legal analysis is adopted from the previous ruling.

declaratory judgments against them based on their denial of defense and indemnity to Gilchrist, in alleged violation of commercial general liability policies acquired by Gilchrist from those insurers. See id. at 4–9. Gilchrist's claims against Travelers are in connection with a lawsuit brought by Fontenot and Wilder to recover damages from Gilchrist for trespass and breach of contract. The Fontenot/Wilder lawsuit arose from an agreement between Fontenot, Wilder and Gilchrist to buy and sell dirt from the Fontenot/Wilder property and to temporarily store debris on their property from a nearby road construction project. See id. at 5–7. Gilchrist alleges that it was forced to defend itself in the Fontenot/Wilder suit and that neither of its insurers has indemnified it for the $5,559,000 verdict, plus costs and fees, awarded to Fontenot and Wilder.[2] See id.

Arch was the first to file a motion to dismiss for failure to state a claim, arguing that it had no duty to defend or to indemnify Gilchrist, which was granted by this Court. See Record Documents 25 and 48-49. Thereafter, Travelers filed the instant motion to dismiss. See Record Document 50. Gilchrist filed an opposition to the motion and Travelers filed a reply. See Record Documents 53-54.

---

[2] In the instant suit, Gilchrist raised no claims against Fontenot and Wilder but instead named them as "interested parties" in its claim for declaratory judgment against the insurers. See id. at 8–9, ¶¶ 39 and 49. The insurers removed the suit to this Court on the basis of diversity jurisdiction, 28 U.S.C. § 1332, alleging that Fontenot and Wilder were improperly joined to defeat jurisdiction. See Record Document 1. Gilchrist moved to remand, contesting the allegations of improper joinder. See Record Document 19. Magistrate Judge Kay recommended that the motion to remand be denied and that Fontenot and Wilder be dismissed without prejudice as improperly joined, and this Court adopted her recommendation. See Record Documents 34 and 40.

## II. Relevant Allegations and Policy Provisions.

Travelers insured Gilchrist through a commercial general liability policy, which was renewed twice. See Record Document 50 at Exs. 4-6.[3] After the underlying Fontenot/Wilder lawsuit was filed in 2012, Gilchrist requested that Travelers provide a defense and indemnity under the policies. Travelers denied defense and indemnity coverage for the claims.

In their state court complaint, Fontenot and Wilder asserted that Gilchrist's actions violated Louisiana law through failure to perform the contract in good faith and failure to perform its duties and obligations under the contract. See Record Document 50, Ex. 2 at ¶ 13. They alleged that "Gilchrist [] filled in the pit from which they extracted Petitioner's dirt with worthless dirt, debris, concrete, wood and trash from elsewhere" and that Gilchrist "under-measured and underpaid for the dirt that it did haul from Petitioner's land." Id. at ¶¶ 7 and 9. They further asserted that "Gilchrist has continually and maliciously made an outright refusal to pay Petitioner the amounts owed under contract or to remove the debris they dumped on Petitioner's land in violation of the contract." Id. at ¶ 12. They alleged that the "continual presence of the dirt, debris, concrete, wood, and trash on Petitioner's property also constitutes an ongoing and continuing trespass by Gilchrist." Id. at ¶ 13. Fontenot and Wilder referred to "Gilchrist's bad faith refusal to faithfully perform its obligations" when detailing the damages they had suffered. Id. at ¶ 14.

---

[3] The language of each of the policies is the same as applied to the instant facts. Therefore, for ease of reference, the Court will refer to the first policy issued, Exhibit 4 to the Motion to Dismiss filed by Travelers. See Record Document 50 at Ex. 4.

The Travelers policy provides coverage to Gilchrist for "bodily injury" and "property damage." See Record Document 50 at Ex. 4. The relevant coverage provisions and exclusions of the policies state:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

. . .

    **b.**    This insurance applies to "bodily injury" and "property damage" only if:

        **(1)**    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)**    The "bodily injury" or "property damage" occurs during the policy period; and

        **(3)**    Prior to the policy period, no insured listed under Paragraph **1.** Of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

. . .

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

. . .

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. . . .

. . .

**j. Damage To Property**

"Property damage" to:
. . .

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Record Document 50, Ex. 4 at 15-18.

Under the Travelers Policies, "occurrence" and "property damage" are defined as follows:

**SECTION V – DEFINITIONS**

. . .

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

. . .

**17.** "Property damage" means:

    **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Id., Ex. 4 at 28-29.

## LAW AND ANALYSIS

**I.  The Rule 12(b)(6) Standard.**

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The standard for the adequacy of complaints under Rule 8(a)(2) is a "plausibility" standard found in Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007), and its progeny. Under this standard, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555-56, 127 S. Ct. at 1965 (citations omitted). If a pleading only contains "labels and conclusions" and "a formulaic

Under the Travelers Policies, "occurrence" and "property damage" are defined as follows:

**SECTION V – DEFINITIONS**

. . .

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

. . .

**17.** "Property damage" means:

    **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Id., Ex. 4 at 28-29.

## LAW AND ANALYSIS

**I.  The Rule 12(b)(6) Standard.**

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The standard for the adequacy of complaints under Rule 8(a)(2) is a "plausibility" standard found in Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007), and its progeny. Under this standard, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555-56, 127 S. Ct. at 1965 (citations omitted). If a pleading only contains "labels and conclusions" and "a formulaic

Under the Travelers Policies, "occurrence" and "property damage" are defined as follows:

**SECTION V – DEFINITIONS**

. . .

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

. . .

**17.** "Property damage" means:

    **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Id., Ex. 4 at 28-29.

## LAW AND ANALYSIS

**I.  The Rule 12(b)(6) Standard.**

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The standard for the adequacy of complaints under Rule 8(a)(2) is a "plausibility" standard found in Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007), and its progeny. Under this standard, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555-56, 127 S. Ct. at 1965 (citations omitted). If a pleading only contains "labels and conclusions" and "a formulaic

Under the Travelers Policies, "occurrence" and "property damage" are defined as follows:

**SECTION V – DEFINITIONS**

. . .

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

. . .

**17.** "Property damage" means:

    **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

Id., Ex. 4 at 28-29.

## LAW AND ANALYSIS

**I.  The Rule 12(b)(6) Standard.**

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The standard for the adequacy of complaints under Rule 8(a)(2) is a "plausibility" standard found in Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S. Ct. 1955 (2007), and its progeny. Under this standard, "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555-56, 127 S. Ct. at 1965 (citations omitted). If a pleading only contains "labels and conclusions" and "a formulaic

recitation of the elements of a cause of action," the pleading does not meet the standards of Rule 8(a)(2). Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citation omitted). Additionally, courts must accept all allegations in a complaint as true. See Twombly, 550 U.S. at 555, 127 S. Ct. at 1965.

In considering a motion filed pursuant to Rule 12(b)(6), a court may consider: (1) the pleadings and any attachment to the pleadings; (2) documents incorporated into the complaint by reference; and (3) documents that a defendant attaches to its motion to dismiss if those documents are referred to in the plaintiff's complaint and are central to the plaintiff's claim (such as insurance policies and underlying complaints). See Little v. USAA Cas. Ins. Co., No. 09-30948, 2010 WL 4909869, at *2 (5th Cir. Apr. 2, 2010), citing Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322, 127 S. Ct. 2499, 2509 (2007) and Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000). In its complaint, Gilchrist refers to the Fontenot/Wilder petition and the insurance contracts under which it claims coverage. These documents are also central to Gilchrist's current claims. These documents will therefore be considered in the analysis of the motion to dismiss.

## II. Insurance Law.

Under Louisiana law, "[a]n insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code." Mayo v. State Farm Mut. Auto. Ins. Co., 869 So.2d 96, 99 (La. 2004) (citations omitted); see also Lamar Adver. Co. v. Cont'l Cas. Co., 396 F.3d 654, 659-660 (5th Cir. 2005). "The judiciary's role in interpreting insurance contracts is to

ascertain the common intent of the parties to the contract" by construing words and phrases "using their plain, ordinary and generally prevailing meaning. . . ." Mayo, 869 So.2d at 99 (citations omitted).

"An insurer's duty to defend suits on behalf of an insured presents a separate and distinct inquiry from that of the insurer's duty to indemnify a covered claim after judgment against the insured in the underlying liability case." Martco Ltd. P'ship v. Wellons, Inc., 588 F.3d 864, 872 (5th Cir. 2009) (citation omitted). Factual inquiries beyond the complaint are prohibited with respect to the duty to defend but they are indispensable in assessing the duty to indemnify. See id.

Travelers contends that it did not have a duty to defend Gilchrist in the underlying action because there was no "accident," and thus no occurrence, as defined by the Travelers policies. Travelers further asserts that the insuring agreements are not satisfied and the claims are not covered because the property damage was known to have occurred by Gilchrist prior to the inception of the policy. See Record Document 50 at 10-11. Finally, Travelers contends that if an occurrence did take place that triggered coverage under its policies, the claims are excluded under the Travelers policies. Gilchrist contends that the Fontenot/Wilder petition included allegations of "property damage" that was caused by an "occurrence" and that no policy exclusion applies, so as to result in coverage by Travelers. Thus, the issues before the court are whether the Fontenot/Wilder petition alleged a potentially covered event triggering the duty to defend under the policies, whether the insuring agreement was satisfied, and whether the alleged triggering event fell within an exclusion of the policy.

### A. Duty to Defend.

The analysis of the duty to defend begins with an examination of whether any of the facts pled in the underlying state court petition possibly fall within matters covered under the insuring clause. See Martco Ltd. P'ship, 588 F.3d at 872. The insured bears the burden on this issue. See id. "If claims potentially covered under the insuring clause are pled, the insurer then has the burden of proving that the complaint states only facts that fall within an exclusion from coverage." Id., citing Doerr v. Mobil Oil Corp., 774 So.2d 119, 124 (La. 2000). This court must assess whether there is a duty to defend by applying the allegations of the complaint to the underlying policy without resort to extrinsic evidence, known in Louisiana as the "Eight Corners Rule." See id.; Lamar Adver. Co., 396 F.3d at 659-660, citing Complaint of Stone Petroleum Corp., 961 F.2d 90, 91 (5th Cir. 1992). "The insurer has a duty to defend unless the allegations in the complaint as applied to the policy unambiguously preclude coverage." Id., citing Elliott v. Cont'l Cas. Co., 949 So.2d 1247, 1250 (La. 2007). An insurer's duty to defend arises "whenever the pleadings against the insured disclose a possibility of liability under the policy." Id., citing Meloy v. Conoco, Inc., 504 So.2d 833, 839 (La. 1987). The allegations of the complaint are liberally construed when determining whether they set forth grounds that bring the claims within the scope of the insurer's duty to defend. See id., citing Yount v. Maisano, 627 So.2d 148, 153 (La. 1993). Any ambiguity in the policy is construed against the insurer. See id., citing Smith v. Matthews, 611 So.2d 1377, 1379 (La. 1993).

The Court first turns to whether Gilchrist satisfied its burden of demonstrating that the Fontenot/Wilder petition alleges a set of facts that would fall within coverage. More

specifically, the Court must first determine whether the Fontenot/Wilder petition alleges that the "property damage" at issue was caused by an "occurrence." As mentioned, under Louisiana law, "[t]he duty to defend is determined by examining the allegations of the injured plaintiff's petition . . . and the insurer is obligated to tender a defense unless the petition unambiguously excludes coverage." Edwards v. Cont'l Cas. Co., 841 F.3d 360, 363 (5th Cir. 2016), quoting Hardy v. Hartford Ins. Co., 236 F.3d 287, 290 (5th Cir. 2001).

Under the language of the Travelers policy, Travelers "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies" if the "'bodily injury' or 'property damage' is caused by an 'occurrence.'" Record Document 50, Ex. 4 at 15. The policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id., Ex. 4 at 28. Like the Arch policy, the dispute arises when comparing the Fontenot/Wilder petition in the underlying state court proceeding to the language of the insurance policy and then determining the scope of the word "occurrence."

As was the case with the policy provided by Arch, the complicating factor is that the word "accident," as used in the definition of "occurrence," is not defined in the policy. In its previous ruling, this Court reviewed the definition of "accident" provided by the Eastern District of Louisiana in New Orleans Deli & Dining, LLC v. Continental Casualty Company., No. 10-4642, 2011 WL 4551165 (E.D. La. Sept. 29, 2011). In that case, the court, relying upon Black's Law Dictionary, defined accident as "an unintended and unforeseen injurious occurrence; something that does not occur in the usual course of

events or that cou[ld] not be reasonably anticipated." Id. at *4. This Court noted that the Fifth Circuit has also addressed the issue of how to define "accident" when the policy fails to do so, stating that "when the word 'occurrence' is defined as an 'accident,' the occurrence of an unforeseen and unexpected loss constitutes an 'accident' and therefore an 'occurrence.'" Freeport-McMoRan Energy v. Mullen, 233 F. App'x 341, 345 (5th Cir. 2007), quoting N. Am. Treatment Sys., Inc. v. Scottsdale Ins. Co., 943 So.2d 429, 444 (La. App. 1st Cir. 2006); Record Document 48 at 9.

Travelers contends that the Fontenot/Wilder petition asserts that "Gilchrist intentionally and maliciously (a) dumped, buried and spread rubble/debris in, around and throughout the [Fontenot/Wilder] property, (b) refused to remove the rubble/debris and to restore the property to its original condition in bad faith breach of the contract, and (c) failed to pay for amounts owed under the contract." Record Document 50 at 11. Travelers further accurately points out that this Court has already held that the Fontenot/Wilder petition failed to allege an "occurrence" that would be covered by the policy when reviewing the similar language contained in the Arch policy. See id.; Record Document 48. Thus, Travelers contends that the law of the case doctrine should apply to bar re-litigation of the same issue. See id.

As with the Arch policy, in determining whether an accident has been alleged, this Court finds New Orleans Deli and Dining beneficial. In addition to defining the word "accident," the Eastern District in New Orleans Deli and Dining also addressed the duty to defend and intentional conduct in relation to a coverage clause that was similar to the one currently before the court. See New Orleans Deli & Dining, 2011 WL 4551165 at *3.

The plaintiffs in New Orleans Deli and Dining were seeking a defense and indemnity with respect to a civil action that was pending in federal court. In the underlying case, New Orleans Deli and Dining LLC ("NODD") was accused of denying employees tips given to them by customers. See id. at *1. The legal theories alleged by the former employees (referred to as the McCollum plaintiffs) in the underlying suit were "breach of contract, negligence, fraud, unjust enrichment, and conversion." Id. The policy contained the same definition of "occurrence" as the Travelers policy currently before the Court. The New Orleans Deli and Dining court stated that the plaintiffs had not alleged that their loss of use was caused by an "occurrence" as it was defined in the policy. The court then concluded that "[a]ll of the allegations in the McCollum plaintiffs' complaint allege intentional acts on the part of NODD." Id. at *4.[4]

Instead of attempting a new approach after its original attempt failed with the Court in relation to Arch's motion to dismiss, Gilchrist again argues that, under Louisiana law, an "occurrence" is an event that is "unusual and unexpected" from the standpoint of the person injured, citing Gray v. State, 191 So.2d 802, 816 (La. App. 3d Cir. 1966). See Record Documents 41 at 6 and 53 at 6. Once again, Gilchrist relies entirely upon Gray and its analysis of "occurrence" to conclude that Travelers (instead of Arch) breached its

---

[4] Similarly, in Pylant v. Lofton, 626 So.2d 83 (La. App. 3d Cir. 1993), the underlying suit that the insured was seeking a defense for was one of sexual harassment. In the underlying suit, the plaintiff pled both negligent and intentional infliction of emotional distress. See id. at 87. The Louisiana Third Circuit held that this did not constitute an "occurrence" because the conduct, sexual harassment, was clearly intentional and not an accident. See id.

contract by failing to defend it in the underlying action.[5] As noted in the Court's previous opinion regarding the Arch policy, Gray involved a trespass taking of road fill by a contractor who had been wrongly instructed by the Department of Highways to remove the fill from an area the Department had not lawfully expropriated. The contractor's insurer denied the claim, stating that there was no "occurrence" because the contractor had intentionally removed the dirt from the property. Finding the contractor covered by liability insurance, the Louisiana Third Circuit court stated:

> The real basis for determining whether an illegal removal of dirt is an "accident" within the meaning of the policy should be by ascertaining the intention of the parties. By a comprehensive general liability policy, a contractor seeks protection against the almost infinite ways in which he might unintentionally (i.e., by accident) be held liable in the operation of his business. The policy should afford protection against liability which, as here, arises out of the conduct of the contractor which he undertakes without actually knowing or expecting that he will be held liable for damages as a result. In this sense, the unexpected loss to the landowner for which [the contractor] is held liable is within the ambit of the protection intended to be provided by [the] policy.

Gray, 191 So.2d at 816.

Gilchrist again asserts that the instant facts are "parallel" to those in Gray. Gilchrist asserts that there are no allegations in the Fontenot/Wilder petition that they knew they would be damaged by Gilchrist's use of the land nor were there claims that Gilchrist was aware of the liability it faced associated with its actions on the land. Gilchrist thus

---

[5] Once again, as with the Arch motion to dismiss, Gilchrist improperly attempts to take its arguments beyond the eight corners of the policy and petition in relation to the duty to defend. Gilchrist's arguments regarding what allegedly occurred after the completion of the Fontenot/Wilder contract are immaterial to the inquiry.

contends that these allegations, taken as true, are sufficient to survive the instant motion to dismiss. See Record Document 53 at 7-8. This Court again disagrees.

As this Court previously determined, the Fontenot/Wilder petition does not allege conduct undertaken by Gilchrist that would result in Gilchrist not "actually knowing or expecting that [it would] be held liable for damages as a result." Gray, 191 So.2d at 816; Record Document 48 at 12. To the contrary, the conduct alleged in the Fontenot/Wilder petition is conduct that *would* result in "actually knowing or expecting" that Gilchrist would be held liable for damages as a result. Specifically, the petition asserts that "[b]eginning on or about August 18, 2007 up and until March 23, 2011, Petitioner noticed and complained to Gilchrist that it had been using the land subject to the contract to dump worthless asphalt, dirt, concrete, wood and trash. Gilchrist had assured Petitioner the entire time that the site would be cleaned up and the contract honored." Record Document 50, Ex. 2 at ¶ 6. These are not actions which could unknowingly result in liability for Gilchrist. As the court in Gray noted, through a comprehensive general liability policy, a contractor seeks protection against the almost infinite ways in which he might unintentionally (i.e., by accident) be held liable in the operation of his business. There is simply no reasonable way to interpret the allegations of the Fontenot/Wilder petition to include unintentional or accidental conduct. Even after construing the allegations of the Fontenot/Wilder petition liberally, this Court cannot say that the conduct alleged by the Fontenot/Wilder petition was done "without knowing or expecting that [Gilchrist] would be held liable for damages as a result." Id. Thus, Gray is of no help to Gilchrist.

Louisiana courts have held that "[i]t is well settled that the allegations of fact, and not conclusions, contained in the petition determine the obligation to defend." Duhon v. Nitrogen Pumping & Coiled Tubing Specialists, Inc., 611 So.2d 158, 160-161 (La. App. 3rd Cir. 1992), quoting Jackson v. Lajaunie, 264 La. 181, 270 So.2d 859 (1972). In the Fontenot/Wilder petition, the allegations are of intentional conduct, which prevent the conduct from being considered an accident, and thus an occurrence, under the policy. There is no question that "dump[ing] worthless asphalt, dirt, concrete, wood, and trash" on the Fontenot/Wilder property is an intentional act. Record Document 50, Ex. 2 at ¶ 6. Gilchrist was also alleged to have "filled in the pit from which they extracted Petitioner's dirt with worthless dirt, debris, concrete, wood and trash from elsewhere." Id. The allegations of the Fontenot/Wilder petition further unambiguously alleged intentional conduct by stating:

> Despite Petitioner's efforts to have the worthless dirt, debris, concrete, wood, and trash dumped on its property removed by Gilchrist, and despite Petitioner's efforts to be properly compensated for the amount of valuable dirt removed from its property, Gilchrist has continually and maliciously made an outright refusal to pay Petitioner the amounts owed under contract or to remove the debris they dumped on Petitioner's land in violation of the contract.

Id. These allegations of fact clearly show Fontenot/Wilder pled intentional conduct. Gilchrist's attempts to reframe the description of its actions cannot mask all of the factual allegations of intentional conduct set out in the Fontenot/Wilder petition. Therefore, in the underlying Fontenot/Wilder action, Gilchrist's actions do not constitute an "occurrence" within the meaning of the policy. The underlying state court proceeding is a lawsuit

pertaining to the intentional acts of Gilchrist.[6] Thus, the Travelers policy, like the Arch policy, does not provide a duty to defend the Fontenot/Wilder lawsuit, as there has been no "occurrence" as contemplated by the Travelers policy language.[7]

### B. Duty to Indemnify.

Travelers contends that it has no duty to indemnify Gilchrist for the judgment in the underlying lawsuit for the same reasons that it had no duty to defend. See Record Document 50 at 20.[8] Travelers also argues that because the jury found a bad faith breach

---

[6] Even if the Court concluded that coverage existed under the Travelers policy, Gilchrist's claims would likely ultimately be excluded, as the Travelers policy excludes coverage for "property damage" that is "expected or intended from the standpoint of the insured." Record Document 50, Ex. 4 at 16. Travelers also asserts that the "Damage To Property" exclusion also precludes coverage. See Record Document 50 at 18. However, the Court need not reach these issues in light of the conclusion that there was no "occurrence" under the Travelers policy.

[7] Travelers contends that it had another policy provision it could rely upon to excuse it from the duty to defend. The Travelers policy only provides coverage for property damage that occurs during the policy period if the insured did not know the property damage had occurred, in whole or in part, before the policy period commenced. Here, Traveler asserts that Gilchrist clearly knew of the damage alleged in the Fontenot/Wilder petition before the beginning of the first Travelers policy. The Fontenot/Wilder petition alleged that "[b]eginning on or about August 18, 2007 . . ., [they] noticed and complained to Gilchrist that it had been using the land subject to the contract to dump worthless asphalt, dirt, concrete, wood, and trash," and that "Gilchrist had assured [Fontenot and Wilder] the entire time that the site would be cleaned up and the contract honored." Record Document 50, Ex. 2 at ¶ 6. The first Travelers policy did not begin until August 1, 2009, and, relying upon the allegations of the Fontenot/Wilder petition, this was well after Gilchrist had caused property damage that was deemed to have been known to have occurred pursuant to the policy language. Thus, this argument would likely also result in Travelers having no obligation to defend Gilchrist. However, the Court need not reach this issue because of the finding that there was no occurrence under the Travelers policy.

[8] Travelers also contends that the indemnity claim is premature, but this argument is unnecessary to address in light of the Court's findings.

of contract, they also implicitly found that Gilchrist committed an intentional act resulting in damages, which was not an "occurrence" under the Travelers policy. The jury verdict form in the underlying action indicates that the jury answered "yes" when asked whether the plaintiffs had proven that the defendant breached a contractual obligation it owed to plaintiffs and also answered "yes" when asked whether the defendant acted in bad faith in breach of its obligation. See Record Document 50, Ex. 3.[9]

An insurer's duty to indemnify typically can be resolved only after the conclusion of the underlying action, as the insurer's duty to indemnify is based on the "actual facts" brought out in the underlying action. See VRV Dev. L.P. v. Mid-Continent Cas. Co., 630 F.3d 451, 459 (5th Cir. 2011) (citation omitted). However, the duty to indemnify may be resolved when "the insurer has no duty to defend and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify." Id. (citing Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin, 955 S.W.2d 81, 84 (Tex. 1997).

The Court has found that Travelers had no duty to defend because Gilchrist has not shown that the allegations in the Fontenot/Wilder lawsuit are an "occurrence" that would be covered by the policy. There simply was no "occurrence" based on either the allegations in the Fontenot/Wilder petition or the trial. Since there is no additional evidence before the Court that would change the determination of coverage, and there is

---

[9] Regarding the indemnity analysis, the Court may take judicial notice of the jury verdict form in the state court record as a matter of public record. See Norris v. Hearst Trust, 500 F.3d 454, 461 n.9 (5th Cir. 2007) ("[I]t is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record.").

no set of circumstances before the Court that would result in a determination that coverage under the policy exists, the Court concludes that Travelers also has no duty to indemnify.

## CONCLUSION

Based on the foregoing, the Motion to Dismiss filed by Travelers (Record Document 50) is **GRANTED**.

A judgment consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 23rd day of September, 2019.

S. MAURICE HICKS, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT